## HOLDERMAN v. REYNOLDS.

(Court of Civil Appeals of Texas. Austin. March 5, 1913. Rehearing Denied June 25, 1913.)

1. TRIAL (§ 60*)—RECEPTION OF EVIDENCE— PROOF OF AGENCY.

Where, in a suit upon promissory notes, the answer averred that the notes had been paid off and discharged by contracts entered into with agents of the owner of the notes, defendant was properly permitted to testify as to contracts with the alleged agents, there being some proof tending to show that they were the agents of the owner with authority to make the contracts.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 141–145; Dec. Dig. § 60.*]

2. RELEASE (§ 55*)—EVIDENCE.

As a defense to a suit upon notes, defendant pleaded that they were executed for a cotton gin which was afterwards sold by the defendant to a third party, who assumed the payment of the notes sued on; that at the time of the sale of the cotton gin he also sold to the third party a lot and corn sheller, for which the third party executed to defendant his note for $600, and a vendor's lien was retained by defendant on the corn sheller and lot to secure this note; that afterwards the owner of the notes sued on agreed to release defendant from all liability on them if defendant would release his lien and permit the owner to subject the corn sheller and lot to the satisfaction of the notes sued on. *Held*, that it was error to permit defendant to excuse his failure to release the note and lien by testifying that he had never been requested to do so, as the burden of proof was on defendant to prove the contract pleaded as a defense and his compliance with it.

[Ed. Note.—For other cases, see Release, Cent. Dig. §§ 94–100; Dec. Dig. § 55.*]

3. BILLS AND NOTES (§ 511*) — EVIDENCE — RELEVANCY.

In a suit upon promissory notes, it was error to admit evidence before the jury showing that the volume of business of the owner of the notes amounted to from $45,000 to $90,000 annually, which was entirely immaterial; the only purpose being to excite the sympathy of the jury by contrasting the financial conditions of the parties.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1760–1770; Dec. Dig. § 511.*]

4. LIMITATION OF ACTIONS (§ 193*)—PLEADING—NECESSITY.

In a suit upon promissory notes it was error to admit evidence before the jury showing that some of the notes sued on were barred and could have been defeated by a plea of limitation if it had been desired, as it was not proper to prove a defense not pleaded.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 704–710; Dec. Dig. § 193.*]

Appeal from District Court, McLennan County; J. N. Gallagher, Special Judge.

Action by M. Holderman against C. S. Reynolds. From a judgment in favor of defendant, plaintiff appeals. Reversed.

Davis & Cocke, of Waco, for appellant. Spell & Sanford, of Waco, for appellee.

KEY, C. J. Appellant instituted this suit against appellee upon several different prom-issory notes, some made payable to appellant and others to the firm of D. June & Co., but all owned by appellant. The petition admitted that certain payments had been made and sought to recover the balance alleged to be due on several notes.

In his answer appellee admitted his liability on one of the notes for $150, admitted that he executed all the other notes, but alleged that they had been paid off, settled, and discharged; the answer in that respect being summarized in appellant's brief as follows: "As to the note of $562.50, dated April 16, 1900, defendant admitted that he executed and delivered the said note as alleged in plaintiff's petition, but that the same had been fully paid off and satisfied as follows: That D. June & Co., doing business at Waco, Tex., was engaged in the sale of cotton gin machinery, and that M. Holderman, to whom said note was payable, was manager, and that defendant, about the date of said note, purchased from said D. June & Co., or Holderman, but, as he understood' D. June & Co., the gin plant and gin machinery claimed to be owned by either the partnership or M. Holderman, located at Pancake, in Coryell county, Tex., together with the land on which same was located, about an acre, and that as a part of the purchase price executed the said note for $562.50, but thereafter paid to Holderman or D. June & Co. a sum of money which was received by Holderman, either for himself or D. June & Co., as a credit upon said note, the exact amount and date of which is not remembered, but according to his best recollection was not less than $200 and not exceeding $300, and the date was about November, 1901, and that, if the note was then owned by D. June & Co., Holderman, in receiving it, acted as the agent of D. June & Co. with full power and authority to receive payments and credits upon said note. That the gin plant was operated by said defendant during the ginning season of 1900 and a part of 1901, when the same was accidentally set on fire, resulting in the total and partial destruction of a part thereof, and the remainder not damaged at all or very slightly, but that the gin plant was rendered useless and was not repaired by defendant. That some time in 1902 defendant and the then owner of the note, either Holderman or D. June & Co., entered into an agreement by which the defendant conveyed to Holderman or D. June & Co., all the portions of said gin plant and machinery having any value after the fire, and the land upon which the same was located, in consideration of the balance due upon said note. That the negotiations with reference to said agreement, and in making the same, the owner of said note acted through said Holderman partly and partly through one Sid Farmer, both of whom defendant alleged had full power and authority to act for said

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

Holderman in the particulars of said agreement. That, as to the said notes for $300 each, defendant admits that he executed and delivered the same as alleged by plaintiff, but that the same had been paid off and discharged as follows: That about the date of said two notes defendant purchased from D. June & Co. a complete outfit of wheat threshing machinery at the agreed price of $1,100 and paid D. June & Co. the sum of $200 in cash and executed three promissory notes for $300 each, of which the two of the $300 notes are a part. That the first of said notes was paid in full and canceled and delivered to defendant, and that in the year 1902 defendant and the owner of said two notes for $300 each, either D. June & Co. or Holderman, entered into an agreement by which defendant transferred and delivered to the owner of said two notes all of the threshing machinery in consideration of the cancellation and discharge of said two notes of $300 each. That, in negotiations leading up to said agreement and making the same, the owner of said two notes acted through Holderman partly and partly through one Sid Farmer, both of whom had full power and authority to act for said owner. That, as to the three notes of $2,000 each, defendant admits that he executed and delivered same as alleged in plaintiff's petition, but that they have been long since fully paid off, satisfied, and discharged as follows: That some time previous to the date of the said three notes defendant purchased from D. June & Co. a gin plant, including gin machinery and the land upon which it was located and the buildings thereon, at Corsicana, Tex., at the agreed price of $7,000; in part payment the three notes were executed and delivered to D. June & Co. That the gin plant was operated by defendant during the ginning season of 1903 and 1904, but that at the close of the 1904 season, some time during the year 1905, defendant sold said gin plant and the land on which same was located to one Thompson, having in the meantime made some payments as credits on the indebtedness represented by said three notes, and that a part of the purchase price to be paid by said Thompson was the assumption of the balance due on said three notes. That thereafter defendant moved to the state of Oklahoma, and after he had removed said gin plant was set on fire and partially destroyed in the latter part of the summer or early fall of 1905, according to defendant's best recollection. That contemporaneously with the sale by the defendant to said Thompson of the said gin plant he also sold and conveyed to said Thompson a certain other parcel of land in the city of Corsicana, adjoining the gin plant, upon which was located a corn-sheller plant, and as part payment of the purchase price thereof said Thompson gave to the defendant his promissory note for $623.10, and to secure the same a vendor's lien was retained on the other parcel of land. That shortly after the said fire, and at the special instance and request of one George A. Clark, agent and employé of the then owner of the said three notes, either the said D. June & Co. or the said Holderman, defendant went from his home in the state of Oklahoma to Corsicana and there met Clark. That upon his arrival at Corsicana he learned that the gin plant at the time of the fire was insured against loss by fire, and that the said Thompson and the owner of said three notes, acting by him or their agent Clark, were in a controversy as to how and to whom the amount due and owing under the insurance policy should be paid and how the indebtedness represented by the said three notes, a portion of which still remained unpaid, should be paid and adjusted, and the said Clark, acting as such agent, proposed to defendant that, if he would assist him in an effort to induce Thompson to settle the controversy satisfactorily to Clark and permit the owner of said notes to take whatever steps might be necessary to subject to the payment of the said notes the said other parcel of land upon which the corn sheller was located without objection or interference by defendant, then defendant should be discharged and acquitted of any further liability upon said three notes for $2,000 each, and his liability thereon to be discharged and annulled, which was agreed to by defendant; and an agreement was made between defendant and Clark, acting as such agent with full authority, in accordance with the terms of said proposition, made by said Clark, and that defendant carried out and performed every obligation undertaken and assumed by him under said agreement and thereby was discharged from any further liability upon said notes. And that therefore defendant is not liable for the payment of said notes or any part thereof."

The court instructed the jury to return a verdict for plaintiff for the amount due on the $150 note and to find for him as to the balance alleged to be due on the other notes unless they found in favor of the defendant upon one or more of his pleas of settlement and discharge. The jury returned a verdict for plaintiff as to the $150 note and made specific findings as to each of the others in favor of the defendant. Judgment was rendered accordingly, and the plaintiff prosecutes this appeal.

[1] Much of appellant's brief and argument rests upon the contention that the trial court committed error in permitting appellee to testify as to certain alleged contracts and agreements between him and one Sid Farmer and one Geo. A. Clark. The testimony referred to was in support of the averments in appellee's answer wherein he alleged that the notes had been paid off and discharged by contracts entered into by Sid Farmer and Geo. A. Clark, acting as agents

for D. June & Co., the owner of the notes. The main objection to the testimony was that there was no proof that either Farmer or Clark was authorized by D. June & Co. to make any such contracts or enter into any such agreements. The proof shows that at that time the notes belonged to D. June & Co., and both Farmer and Clark had, for many years, been collecting agents and salesmen for that company; and there was some testimony tending to show that the making of such contracts was within the scope of their authority; and therefore we overrule the assignments relating to those questions. The court submitted the case to the jury by a charge which, in connection with the special charges given at appellant's request, constituted a fair and reasonably accurate statement and submission of the law of the case; and we overrule all the assignments predicated upon the giving or refusal of instructions. As to all of the issues presented to the jury, there was sharp conflict in the testimony; and, to say the least, that portion of the verdict finding for the defendant as to the balance claimed by the plaintiff upon the notes for the Corsicana gin lots rests upon very meager and unsatisfactory testimony; and, this being the case, we have reached the conclusion that the judgment should be reversed on account of the errors hereafter referred to, when considered collectively.

[2] The sixth assignment complains of the action of the court in overruling appellant's objection and permitting appellee, while a witness on the stand, to testify that neither appellant nor any one representing D. June & Co., had requested him to sign a release for the corn sheller note executed to defendant by Thompson for something over $600; and if they were to do so he would sign such release. That testimony related to the alleged agreement in reference to the notes for the Corsicana gin property. The materiality of the lien secured by the note referred to rested upon the fact that it constituted an obstacle tending to prevent D. June & Co. from subjecting the property covered by the lien to the payment of the Corsicana gin lot notes; and the burden rested upon appellee, under the contract pleaded by him, to show that he had removed that obstacle; and therefore it was not proper for him to undertake to excuse himself for a failure to obtain or execute a release of the lien by testifying that he had never been requested, but was willing, to do so.

[3] The seventh assignment is addressed to the action of the court in permitting counsel for appellee to ask appellant on cross-examination, and requiring appellant to answer, as to the volume of business transacted by D. June & Co. from 1900 to 1905. The answers of the witness showed that the

business referred to ranged from $45,000 to $90,000 annually. That testimony was utterly immaterial upon any phase of the case, and we can surmise no reason why it was placed before the jury, unless it was for the purpose of contrasting the financial conditions of D. June & Co. on the one hand and appellee on the other. The undisputed proof shows that appellant was a member of the firm and general manager of D. June & Co.; and, unless this testimony was intended to suggest to the jury that a rich man was suing a poor man, we can conceive of no reason why it was offered, and counsel for appellee in their brief have suggested none. In fact, they have not replied to any of the assignments which we hold to be well taken.

[4] The ninth and tenth assignments are predicated upon the ruling of the court permitting appellee's counsel, over appellant's objection, to require appellant, while on cross-examination, to state that he had been informed by his lawyer that some of the notes sued on by appellant were barred and could have been defeated by a plea of limitation, if appellee had interposed that plea. That testimony was wholly immaterial to any issue before the jury; and it was not proper for appellee to prove a defense which he had not pleaded, although he proposed to obtain the proof from the mouth of his adversary.

As the case will be reversed for the reasons stated, we deem it unnecessary to pass upon the assignments which charge that the verdict of the jury is not supported by the testimony. All the other assignments have been considered, and we hold that they do not disclose reversible error.

For the errors pointed out, the judgment is reversed and the cause remanded.

Reversed and remanded.